AARON M. CLEFTON, Esq.  (SBN 318680)
REIN & CLEFTON, Attorneys at Law
1423 Broadway #1133
Oakland, CA  94612
Telephone:  510/832-5001
Facsimile:  510/832-4787
info@reincleftonlaw.com

Attorneys for Plaintiff
BRANDI SCHLATER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRANDI SCHLATER<br><br>Plaintiff,<br><br>v.<br><br><br>DASHAN A. PATEL, M.D.;<br>PROVIDENCE HEALTH<br>SYSTEM-SOUTHERN<br>CALIFORNIA<br><br><br>Defendants. | CASE NO. 24-1365<br><u>Civil Rights</u><br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES:**<br><br>1. **Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)**<br><br>2. **Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)**<br><br>3. **Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*)**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff BRANDI SCHLATER complains of Defendants DASHAN A. PATEL, M.D.; PROVIDENCE HEALTH SYSTEM-SOUTHERN CALIFORNIA and alleges as follows:

1.     **INTRODUCTION:**  On April 16, 2024, Defendants denied disabled Plaintiff Brandi Schlater medical care at their neurology clinic due to her disability. Defendants' employee told Plaintiff that the neurologist would not see her if her service dog was accompanying her because one or more employees in the office were allergic to dogs.  Plaintiff told Defendants' employee that most people are not

allergic to her specific breed of dog because the breed did not shed much and offered to show genetic testing paperwork as proof. Defendants' employee sniffed as if mocking Plaintiff and said she was not interested in reviewing anything from Plaintiff.  Plaintiff then asked Defendants' employees if there was another doctor she could see, but Defendants refused to see her.  Defendants' employees told Plaintiff that she would have to go back to her insurance company for a referral to a different neurologist.

2.      Defendants refused to treat Plaintiff at its clinic with her service dog. As a result, Plaintiff was denied medical care by Defendants because of her disability because she needs her service dog to equally enjoy the premises compared with non-disabled persons. Plaintiff was devastated by her interactions with Defendants.  She desperately needed to be treated by a neurologist for bilateral carpal tunnel syndrome which made it very difficult (and at times impossible) for her to propel herself independently in her manual wheelchair. Plaintiff had already waited months for this referral, and the thought of having to go back to her primary care provider to ask for a referral to a different neurologist and then to wait months more before the prospect of any relief was overwhelming. Moreover, it is not clear there are any other clinics that accept her insurance, and she lives far away from any neurologists' offices. After leaving Defendants' neurology office, Plaintiff suffered a panic attack.

3.      The Defendants' decision to bar her from entry because of her service dog contravenes the Department of Justice's technical assistance and guidance on the subject of "Service Animals."  In relevant part, the guidance states:

- **Allergies** and fear of dogs **are not valid reasons for denying access or refusing service to people using service animals**. When a person who is allergic to dog dander and a person who uses a service animal must spend time in the same room or facility, for example, in a school classroom or at a homeless shelter, they both should be accommodated by assigning them, if

possible, to different locations within the room or different rooms in the facility.

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence.

DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/ (emphasis added).

4.    On April 16, 2024, Plaintiff needed medical care for bilateral carpal tunnel syndrome.  Plaintiff went to the Providence medical provider, Dr. Darshan Patel's office located at 15979 Tuscola Road, Apple Valley, California 92307 to be treated after receiving a referral to that facility from her insurance company. As is her usual practice, Plaintiff was accompanied by her service dog Kairos. Upon entering the clinic, Defendants' employee asked Plaintiff if she could leave her dog in the waiting room while she was seen by medical staff.  Plaintiff explained that it was important that she and Kairos stay together because he is her service dog, and Kairos performs tasks to ameliorate her disability, including pulling her wheelchair since she is unable to push herself due to her carpal tunnel syndrome. Defendants' employee said "okay" and left.  Later, Defendants' employee returned and informed Plaintiff that Dr. Patel would not see her due to the presence of her service dog. Thus, Defendants denied Plaintiff medical care at their clinic because she is disabled and needs the assistance of a service animal for certain tasks.  Plaintiff left to try to get a referral to another neurologist.

5.    Defendants' employees did not ask to see Kairos so that they could assess him, nor did they ask Plaintiff what tasks Kairos was trained to perform for

1    Plaintiff.

2         6.    Plaintiff still needs the care of a neurologist.  Defendants' neurology

3    clinic is the closest one to Plaintiff's home which accepts referrals from her health

4    insurance.  She intends to return to the clinic to receive treatment in the future but

5    cannot do so until the policies of the clinic are made accessible to disabled

6    individuals who use service dogs, including revision of its service dog policies and

7    necessary employee training and/or re-training.  Plaintiff has brought this lawsuit to

8    force Defendants to change their discriminatory and illegal policies and compensate

9    her for refusing to allow her treatment to enter the clinic because she is a disabled

10   person who needs the assistance of her qualified service dog.  Plaintiff seeks an

11   injunction to protect the rights of all disabled persons, including Plaintiff, when

12   accompanied by a qualified service dog at the neurology clinic.

13        7.    **JURISDICTION:**  This Court has jurisdiction of this action pursuant

14   to 28 USC sections 1331 and 1343.  This Court has jurisdiction over the claims

15   brought under California law pursuant to 28 U.S.C. § 1367.

16        8.    **VENUE:**  Venue is proper in this court pursuant to 28 USC

17   section 1391(b) and is proper because the real property which is the subject of this

18   action is located in this district and that Plaintiff's causes of action arose in this

19   district.

20        9.    **INTRADISTRICT:**  This case should be assigned to the Eastern

21   Division because the real property which is the subject of this action is located in

22   this intradistrict and Plaintiff's causes of action arose in this intradistrict.

23        10.   **PARTIES:**  Plaintiff Brandi Schlater has been and is a professional

24   dog and service dog trainer, both before and after she became disabled herself. She

25   is a "qualified" disabled person who uses the assistance of a service dog herself.

26   Plaintiff was injured in a very serious car accident in 2021 in which she suffered an

27   open pelvic fracture.  As a result of her injuries her left leg is permanently

28   paralyzed (a condition known as monoplegia).  Plaintiff can stand and transfer from

4

her wheelchair to another seat, but she is unable to walk.  Plaintiff uses a manual wheelchair for mobility, and due to the repetitive motions necessary to propel herself in her wheelchair, she now suffers from bilateral carpal tunnel syndrome. Plaintiff has been issued a parking placard for disabled persons from the State of California to park any vehicle which she drives or is transported in, in a designated and properly configured disabled accessible parking space. As a result of the horrific accident, she survived and the significant life changes her disability has caused, Plaintiff also suffers from post-traumatic stress disorder (PTSD) and depression.

11.    Plaintiff relies upon her service dog, a Saint Bernard/Old English Sheep Dog mix named "Kairos" to assist her with certain tasks including pulling her wheelchair, carrying items for her, and retrieving items for Plaintiff.  Kairos is also trained to provide some relief to Plaintiff for discomfort caused by her disability including lying on her leg to warm it when needed due to bad circulation and allowing Plaintiff to rest her leg on his back when she needs to elevate her leg. Additionally, Kairos is also trained to perform certain tasks to assist Plaintiff with her psychiatric disability including creating space for Plaintiff in crowds, providing deep pressure therapy, waking her from nightmares, and interrupting harmful behaviors that Plaintiff may exhibit such as picking at her fingernails until they bleed.  All of these tasks Plaintiff has trained Kairos to do on command and are not behaviors that Kairos has ever engaged in naturally or without training.  Kairos was individually trained to be a service dog, who has a business breeding and training service dogs and has been training dogs for over 5 years.  Additionally, Plaintiff continues to reinforce the training with Kairos daily.  Plaintiff is a qualified person with a disability as defined under federal and state law who is substantially limited in the major life activities of walking, balancing, bending and standing.  42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(1).  A Photo depicting Kairos similar to as he appeared on the date of the incident is

below:



12.     Defendants DASHAN A. PATEL, M.D.; PROVIDENCE HEALTH SYSTEM-SOUTHERN CALIFORNIA, are and were at all times relevant to this Complaint the owners, operators, lessors and/or lessees of the subject business located at 15979 Tuscola Road, Apple Valley, California 92307, known as Dr. Dashan A. Patel, M.D.'s Neurology Clinic ("The Clinic").

13.     The Clinic is a place of "public accommodation" and a "business establishment" subject to the requirements *inter alia* of the categories of 42 U.S.C. section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil Code sections 51 *et seq.*, and of California Civil Code sections 54 *et seq.*

14.     **FACTUAL STATEMENT:**  Plaintiff Brandi Schlater has been working with her service dog Kairos for over a year.  Kairos is a Saint Bernard/Old

English Sheep Dog mix who was both professionally and individually trained by Plaintiff to be a service dog.  Plaintiff has also trained and continues to train Kairos to serve her specific needs throughout their relationship.  Kairos is specifically trained to assist Plaintiff by pulling her wheelchair, carrying items for her, and retrieving items for her. Kairos is also trained to provide some relief to Plaintiff for discomfort caused by her disability including lying on her leg to warm it when needed due to bad circulation and allowing Plaintiff to rest her leg on his back when she needs to elevate her leg. Plaintiff has specific commands that she gives Kairos when she needs him to perform these tasks. Additionally, Kairos is also trained to perform certain tasks to assist Plaintiff with her psychiatric disability including blocking to create space for Plaintiff in crowds, providing deep pressure therapy, waking her from nightmares, and interrupting harmful behaviors that Plaintiff may exhibit such as picking at her fingernails until they bleed.

15.   Kairos is a working dog; he is not a pet.  Plaintiff and Kairos have trained extensively together, and they supplement that training daily.  Plaintiff takes Kairos everywhere with her in public.  It is important they stay together as much as possible because (a) Kairos provides important services for Plaintiff; and (b) it is part of the training and bonding requirement that they be together constantly to maintain their bond.  With few exceptions, where Plaintiff goes, Kairos goes.

16.   Plaintiff uses a manual wheelchair for mobility.  Due to the repetitive motion of pushing herself in her manual wheelchair Plaintiff developed symptoms of carpal tunnel syndrome in both hands. Her primary care physician submitted a referral to Plaintiff's insurance for her to see a neurologist.  After months of waiting, Plaintiff's finally got an appointment with a Defendant Dr. Dashan Patel. She was hopeful that Dr. Patel would be able to help her get some relief from her carpal tunnel syndrome symptoms.

17.   On April 16, 2024, Plaintiff drove with Kairos, her boyfriend and her IHSS worker from her home to Dr. Patel's office in Apple Valley, California.

Although Dr. Patel is the closest neurologist to her home, she still had to drive for around 25 minutes to the appointment.

18.     When Plaintiff arrived at Defendants' medical office, she checked in with the staff in the waiting room who provided her with some paperwork to fill out.  Plaintiff was in the middle of filling out the requested paperwork when one of Defendants' employees opened the window at the reception desk and loudly asked Plaintiff if she could leave her dog in the waiting room while she was seen by the doctor.  Plaintiff explained that she could not leave Kairos in the waiting room because he is her service dog, and they must stay together.  Defendants' employee said, "okay" and closed the window.

19.     Plaintiff turned in her completed paperwork and then continued to wait for her turn to see the neurologist.  After Plaintiff had been waiting for about 20 minutes one of Defendants' employees came to the waiting area to speak with her.  Loudly in front of the other patients in the waiting room Defendants' employee told Plaintiff that the doctor would not be able to treat her because he is allergic to dogs.  Plaintiff explained that the majority of people who are allergic to dogs are not allergic to Kairos.  Plaintiff offered to show Defendants' employee Kairos' genetic testing confirming that he is hypoallergenic.  Defendants' employee declined to review Plaintiff's paperwork.  Defendants' employee told Plaintiff that there were several employees in the office who are allergic to dogs and then sniffed dramatically.

20.     Plaintiff then asked Defendants' employee if there was another doctor or medical professional who she could see in the office.  Defendants' employee told Plaintiff that no one in the office would see her.  Defendants' employee then told Plaintiff that she would have to request a referral for a different neurologist from her insurance provider.  Plaintiff asked if she could speak with the doctor personally, but Defendants' employee told her no and then claimed that he was on a conference call.

21.     Defendants' refusals to allow Plaintiff to speak with someone or hear her appeals communicated to Plaintiff that she would not be treated by Defendants because she is a disabled individual who requires the use of a service dog to assist her with certain tasks.  Plaintiff left Defendants' clinic feeling humiliated at being singled out in front of all the other patients in the waiting room.  Plaintiff's boyfriend and IHSS caregiver were witnesses to all these interactions.

22.     During her interactions with Defendants' employees, Plaintiff began exhibiting symptoms of panic including shaky hands and rapid heart.  By the time she returned to her car after the interactions were over, Plaintiff was having a panic attack.  Plaintiff was trembling, sweating, and crying, terrified of losing her mobility further without treatment for her carpal tunnel syndrome.  She was also feeling embarrassed, frustrated, and angry because she had already waited months for this appointment and now, she would have to start the referral process all over again with her insurance company.  Plaintiff was desperate to get some relief from her carpal tunnel syndrome as it was truly affecting her ability to get around in her wheelchair both because she is unable to push her chair herself and it is more difficult for her to grip Kairos' harness so that he can pull her chair.

23.     As soon as Plaintiff left Defendants' clinic, she went straight to her primary care provider to request a new referral to a neurologist.

24.     Plaintiff wishes to return to be treated at The Clinic as she still needs to be treated by a neurologist, and The Clinic is the closest neurology practice to her home which accepts her health insurance. It is still over 20 miles from her home.  However, Plaintiff cannot return to The Clinic until *after* Defendants have implemented proper service animal policies and training of its staff.  Plaintiff is deterred from returning to The Clinic until these policies and training are in place.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**(42 USC §§ 12101 *et seq.*)**

25.     Plaintiff repleads and incorporates by reference, as if fully set forth

9

again herein, the factual allegations contained in Paragraphs 1 through 24, above, and incorporates them herein by reference as if separately repled hereafter.

26.    In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous."  42 U.S.C. § 12101(a).

27.    The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 USC § 12182.

28.    Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

29.     The Clinic is a public accommodation within the meaning of Title III of the ADA.  42 U.S.C. § 12181(7)(F).

30.    The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities."  42 U.S.C. § 12182(b)(2)(A)(ii).

31.   Under the "2010 Revised ADA Requirements: Service Animals," as published by the United States Department of Justice, and distributed by the DOJ's Civil Rights Division, Disability Rights Section, "Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go."  ADA 2010 Revised Requirements, www.ada.gov/service -animals-2010.htm  Further,

> **Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**

*Ibid.*, emphasis in original.

32.   Defendants have a policy and practice of denying treatment and services to patients with service animals at The Clinic. This is contrary to the ADA. The Department of Justice issued guidance on the subject of "Service Animals."  In relevant part, the guidance states:

- **Allergies** and fear of dogs **are not valid reasons for denying access or refusing service to people using service animals**. When a person who is allergic to dog dander and a person who uses a service animal must spend time in the same room or facility, for example, in a school classroom or at a homeless shelter, they both should be accommodated by assigning them, if possible, to different locations within the room or different rooms in the facility.

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence**.**

DOJ 2010 "Service Animal" guidance available at

1   https://www.ada.gov/resources/service-animals-2010-requirements/ (emphasis

2   added).

3       33.    On information and belief, as of the date of Plaintiff's most recent

4   visits to The Clinic on or about April 16, 2024, Defendants continue to deny full

5   and equal access to Plaintiff and to discriminate against Plaintiff on the basis of

6   Plaintiff's disabilities, thus wrongfully denying to Plaintiff the full and equal

7   enjoyment of the goods, services, facilities, privileges, advantages and

8   accommodations of Defendants' premises, in violation of the ADA.

9       34.    In passing the Americans with Disabilities Act of 1990 (hereinafter

10  "ADA"), Congress stated as its purpose:

11       It is the purpose of this Act

12       (1) to provide a clear and comprehensive national mandate for the
         elimination of discrimination against individuals with disabilities;

13

14       (2) to provide clear, strong, consistent, enforceable standards addressing
         discrimination against individuals with disabilities;

15       (3) to ensure that the Federal Government plays a central role in enforcing
         the standards established in this Act on behalf of individuals with disabilities;
16       and

17       (4) to invoke the sweep of congressional authority, including the power to
         enforce the fourteenth amendment and to regulate commerce, in order to
18       address the major areas of discrimination faced day-to-day by people with
         disabilities.
19

20  42 USC § 12101(b).

21       35.    As part of the ADA, Congress passed "Title III - Public

22  Accommodations and Services Operated by Private Entities" (42 USC § 12181 *et*

23  *seq.*).  The subject property and facility are one of the "private entities" which are

24  considered "public accommodations" for purposes of this title, which includes any

25  "professional office of a health care provider."  42 USC § 12181(7)(F).

26       36.    The ADA states that "No individual shall be discriminated against on

27  the basis of disability in the full and equal enjoyment of the goods, services,

28  facilities, privileges, advantages, or accommodations of any place of public

accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

The acts and omissions of Defendants set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

37.   The removal of each of the policy barriers complained of by Plaintiff

as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of sections 12181 and 12182 of the ADA.  As noted hereinabove, removal of each and every one of the policy barriers complained of herein were already required under California law.  In the event that removal of any barrier is found to be "not readily achievable," Defendants still violated the ADA, per section 12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

38.     On information and belief, as of the dates of Plaintiff's encounters at the premises and as of the filing of this Complaint, Defendants' actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other disabled persons who work with service dogs, which violates Plaintiff's right to full and equal access and which discriminates against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

39.     Defendants' actions continue to deny Plaintiff's rights to full and equal access by deterring Plaintiff from patronizing The Clinic and discriminated and continue to discriminate against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages and accommodations, in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

40.     Pursuant to the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.,* Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964, 42 USC 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of her disabilities in violation of sections 12182 and 12183.  On information and belief, Defendants have continued to violate the law and deny the rights of Plaintiff and other disabled persons to "full

and equal" access to this public accommodation since on or before Plaintiff's

encounters.  Pursuant to section 12188(a)(2)

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)...
> injunctive relief shall include an order to alter facilities to make such
> facilities readily accessible to and usable by individuals with disabilities
> to the extent required by this title.  Where appropriate, injunctive relief
> shall also include requiring the provision of an auxiliary aid or service,
> modification of a policy, or provision of alternative methods, to the
> extent required by this title.

41.     Plaintiff seeks relief pursuant to remedies set forth in section 204(a) of

the Civil Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal

Regulations adopted to implement the Americans with Disabilities Act of 1990.

Plaintiff is a qualified disabled person for purposes of § 12188(a) of the ADA who

is being subjected to discrimination on the basis of disability in violation of Title III

and who has reasonable grounds for believing she will be subjected to such

discrimination each time that she may use the property and premises, or attempt to

patronize The Clinic, in light of Defendants' policies barriers.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

**SECOND CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH**
**ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS**
**WITH DISABILITIES ACT AS INCORPORATED**
**BY CIVIL CODE SECTION 51(f)**

42.     Plaintiff re-pleads and incorporates by reference, as if fully set forth

again herein, the allegations contained in Paragraphs 1 through 41 of this

Complaint and incorporates them herein as if separately re-pleaded.

43.     At all times relevant to this action, the Unruh Civil Rights Act,

California Civil Code § 51(b), provided that:

> All persons within the jurisdiction of this state are free and equal, and
> no matter what their sex, race, color, religion, ancestry, national origin,
> disability, or medical condition are entitled to the full and equal
> accommodations, advantages, facilities, privileges, or services in all
> business establishments of every kind whatsoever.

44.     California Civil Code section 52 provides that the discrimination by

Defendants against Plaintiff on the basis of disability constitutes a violation of the

1    general anti-discrimination provisions of sections 51 and 52.

2         45.    Each of Defendants' discriminatory acts or omissions constitutes a

3    separate and distinct violation of California Civil Code section 52, which provides

4    that:

5         Whoever denies, aids or incites a denial, or makes any discrimination
          or distinction contrary to section 51, 51.5, or 51.6 is liable for each and
6         every offense for the actual damages, and any amount that may be
          determined by a jury, or a court sitting without a jury, up to a maximum
7         of three times the amount of actual damage but in no case less than four
          thousand dollars ($4,000), and any attorney's fees that may be
8         determined by the court in addition thereto, suffered by any person
          denied the rights provided in Section 51, 51.5, or 51.6.
9

10        46.    Any violation of the Americans with Disabilities Act of 1990

11   constitutes a violation of California Civil Code section 51(f), thus independently

12   justifying an award of damages and injunctive relief pursuant to California law,

13   including Civil Code section 52.  Per Civil Code section 51(f), "A violation of the

14   right of any individual under the Americans with Disabilities Act of 1990 (Public

15   Law 101-336) shall also constitute a violation of this section."

16        47.    The actions and omissions of Defendants as herein alleged constitute a

17   denial of access to and use of the described public facilities by disabled persons

18   who use service dogs within the meaning of California Civil Code sections 51 and

19   52.  As a proximate result of Defendants' action and omissions, Defendants have

20   discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and are

21   responsible for statutory and compensatory to Plaintiff, according to proof.

22        48.    **FEES AND COSTS:**  As a result of Defendants' acts, omissions and

23   conduct, Plaintiff has been required to incur attorney fees, litigation expenses and

24   costs as provided by statute in order to enforce Plaintiff's rights and to enforce

25   provisions of law protecting access for disabled persons and prohibiting

26   discrimination against disabled persons.  Plaintiff therefore seeks recovery of all

27   reasonable attorney fees, litigation expenses and costs pursuant to the provisions of

28   California Civil Code sections 51 and 52.  Additionally, Plaintiff's lawsuit is

intended to require that Defendants make their facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

49.    Plaintiff suffered damages as above-described as a result of Defendants' violations.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

**THIRD CAUSE OF ACTION:**
**DAMAGES AND INJUNCTIVE RELIEF**
**FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC**
**FACILITIES  IN A PUBLIC ACCOMMODATION**
**(Civil Code §§ 54 *et seq.*)**

50.    Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 49 of this Complaint and all paragraphs of the third cause of action, as plead infra, incorporates them herein as if separately re-pleaded.

51.    Under the California Disabled Persons Act (CDPA), people with disabilities are entitled to the "full and free use of . . . public buildings, . . . public facilities, and other public places."  Civil Code § 54(a).

52.    Civil Code section 54.1(a)(1) further guarantees the right of "full and equal access" by persons with to "accommodations, advantages, facilities , medical facilities, including hospitals, clinics, and physicians' offices…or other places to which the general public is invited."  Civil Code § 54.1(c) also specifies that, "individuals with a disability and persons authorized to train service dogs for individuals with a disability, may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b)."

53.    Civil Code section 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or

service dog, especially trained for the purpose, in any of the places specified in Section 54.1."

54.     Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2." This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person."

55.     Defendants are also in violation of California Penal Code section 365.5(b) which states:

> No blind person, deaf person, or disabled person and his or her specially trained guide dog, signal dog, or service dog shall be denied admittance to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public accommodation, amusement or resort, and other places to which the general public is invited within this state because of that guide dog, signal dog, or service dog.

56.     The Clinic is a public accommodation within the meaning of the CDPA.  On information and belief, Defendants are the owners, operators, lessors or lessees of the public accommodation.

57.     Defendants made the decision to knowingly and willfully exclude Plaintiff and her service dog from their public accommodation and thereby deny Plaintiff's her right of entrance into their place of business with her service dog.  As a result of that decision Plaintiff has faced the continuing discrimination of being essentially barred from entering this public accommodation and place of business based upon Defendants' illegal requirement for paperwork for Plaintiff's legally protected use of her service dog.  Plaintiff has continued to suffer denial of access to these facilities, and she faces the prospect of unpleasant and discriminatory treatment should she attempt to return to these facilities.  Plaintiff is unable to

return to The Clinic until she receives the protection of this Court's injunctive relief, and she has continued to suffer discrimination on a daily basis since April 16, 2024, all to her statutory damages pursuant to California Civil Code §§ 54.1, 54.2, and 54.3 and California Penal Code section 365.5.

58.   **INJUNCTIVE RELIEF:**  Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendants as complained of herein which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are disabled and who require the assistance of service animals from full and equal access to these public facilities.  Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class citizen and serve to discriminate against her on the sole basis that Plaintiff is a person with disabilities who requires the assistance of a service animal.

59.   Plaintiff wishes to return to patronize The Clinic but is deterred from returning to use these facilities, because the lack of access and the significant policy barriers will foreseeably cause her further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendants continue, to achieve equal access to and use of these public facilities. Therefore, Plaintiff cannot return to patronize The Clinic and its facilities and is deterred from further patronage until these facilities are made properly accessible for disabled persons, including Plaintiff and other disabled individuals who require the assistance of a service animal.

60.   The acts of Defendants have proximately caused and will continue to cause irreparable injury to Plaintiff if not enjoined by this Court.  Plaintiff seeks injunctive relief as to Defendants' inaccessible policies.   As to the Defendants that currently owns, operates, and/or leases (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for disabled persons and

those associated with them, and seeks an award of reasonable statutory attorney fees, litigation expenses and costs.

61.    Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendants to grant full and equal access to Plaintiff in the ways complained of and to require Defendants to comply forthwith with the applicable statutory requirements relating to access for disabled persons. Such injunctive relief is provided by California Civil Code sections 54.1, 54.2 and 55, and other laws.  Plaintiff further requests that the Court award damages pursuant to Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs pursuant to Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as hereinafter prayed for.

62.    **DAMAGES:**  As a result of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendants in owning, operating, leasing, constructing, altering, and/or maintaining the subject facilities, Plaintiff has suffered a violation of his civil rights, including but not limited to rights under Civil Code sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to his damages per Civil Code section 54.3, including general and statutory damages, as hereinafter stated.  Defendants' actions and omissions to act constitute discrimination against Plaintiff on the basis that she was and is disabled and unable, because of the policy barriers created and/or maintained by the Defendants in violation of the subject laws, to use the public facilities on a full and equal basis as other persons.  The violations have deterred Plaintiff from returning to attempt to patronize The Clinic and will continue to cause her damages each day these barriers to access and policy barriers continue to be present.

63.    Although it is not necessary for Plaintiff to prove wrongful intent in order to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see Donald v. Café Royale*, 218 Cal. App. 3d 168 (1990)),

1  Defendants' behavior was intentional. Defendants was aware and/or was made

2  aware of its duties to refrain from establishing discriminatory policies against

3  disabled persons, prior to the filing of this complaint.  Defendants' establishment of

4  their discriminatory policy to deny and restrict entry to persons with service dogs,

5  and its implementation of such a discriminatory policy against Plaintiff, indicate

6  actual and implied malice toward Plaintiff and conscious disregard for Plaintiff's

7  rights and safety.

8       64.  **FEES AND COSTS:**  As a result of Defendants' acts, omissions, and

9  conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and

10  costs as provided by statute, in order to enforce Plaintiff's rights and to enforce

11  provisions of the law protecting access for disabled persons and prohibiting

12  discrimination against disabled persons.  Plaintiff therefore seeks recovery of all

13  reasonable attorney fees, litigation expenses, and costs, pursuant to the provisions

14  of Civil Code sections 54.3 and 55.  Additionally, Plaintiff's lawsuit is intended to

15  require that Defendants make its facilities accessible to all disabled members of the

16  public, justifying "public interest" attorney fees, litigation expenses and costs

17  pursuant to the provisions of California Code of Civil Procedure section 1021.5 and

18  other applicable law.

19       65.  Plaintiff suffered damages as above described as a result of

20  Defendants' violations.  Damages are ongoing based on their deterrence from

21  returning to The Clinic.

22       WHEREFORE, Plaintiff prays for relief as hereinafter stated.

23       **<u>PRAYER</u>**

24       Plaintiff has no adequate remedy at law to redress the wrongs suffered as set

25  forth in this Complaint.  Plaintiff has suffered and will continue to suffer

26  irreparable injury as a result of the unlawful acts, omissions, policies, and practices

27  of the Defendants as alleged herein, unless Plaintiff is granted the relief she

28  requests.  Plaintiff and Defendants have an actual controversy and opposing legal

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

1  positions as to Defendants' violations of the laws of the United States and the State

2  of California. The need for relief is critical because the rights at issue are

3  paramount under the laws of the United States and the State of California.

4    WHEREFORE, Plaintiff Paul Schlater prays for judgment and the following

5  specific relief against Defendants:

6    1.  An order enjoining Defendants, their agents, officials, employees, and

7  all persons acting in concert with them:

8      a. From continuing the unlawful acts, conditions, and practices described

9       in this Complaint;

10      b. To modify its policies and practices to accommodate service dog users

11       in conformity with federal and state law, and to advise Plaintiff that his

12       service dog will not be excluded and she will not be required to show

13       any paperwork or registration cards should she desire to enter and use

14       the services of The Clinic;

15      c. That the Court issue preliminary and permanent injunction directing

16       Defendants as currents owners, operators, lessors, and/or lessees

17       and/or its agents of the subject property and premises to modify the

18       above described property, premises, policies and related policies and

19       practices to provide full and equal access to all persons, including

20       persons with disabilities; and issue a preliminary and permanent

21       injunction pursuant to ADA section 12188(a) and state law directing

22       Defendants to provide facilities usable by Plaintiff and similarly

23       situated persons with disabilities and which provide full and equal

24       access, as required by law, and to maintain such accessible facilities

25       once they are provided and to train Defendants' employees and agents

26       in how to recognize disabled persons and accommodate their rights

27       and needs;

28      d. An order retaining jurisdiction of this case until Defendants have fully

complied with the orders of this Court, and there is a reasonable assurance that Defendants will continue to comply in the future absent continuing jurisdiction;

2.      An award to Plaintiff of statutory, actual, general, and punitive damages in amounts within the jurisdiction of the Court, all according to proof;

3.      An award of civil penalty as against Defendants under California Penal Code § 365.5(c);

4.      An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

5.      An award of prejudgment interest pursuant to Civil Code § 3291;

6.      Interest on monetary awards as permitted by law; and

7.      Grant such other and further relief as this Court may deem just and proper.

Date: July 1, 2024                    REIN & CLEFTON

                                       */s/ Aaron M. Clefton*
                                      By AARON M. CLEFTON, Esq.
                                      Attorneys for Plaintiff
                                      BRANDI SCHLATER

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all claims for which a jury is permitted.

Date: July 1, 2024                    REIN & CLEFTON

                                       */s/ Aaron M. Clefton*
                                      By AARON M. CLEFTON, Esq.
                                      Attorneys for Plaintiff
                                      BRANDI SCHLATER

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES